IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUSTIN JADE COLLINS,

    **Plaintiff,**

    v.                                                CASE NO. 23-3085-JWL

MELISSA WALDOCK, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, a state prisoner appearing pro se and in forma pauperis, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff is a Kansas Department of Corrections ("KDOC") inmate currently confined at the Larned Correctional Mental Health Facility in Larned, Kansas ("Larned").

**I. Nature of the Matter Before the Court**

Plaintiff alleges that Defendants are failing to protect him despite their awareness of the "greenlight" credible threat to his safety. Plaintiff alleges that he served as a confidential informant for KDOC, under signed contract, during a widespread corruption investigation conducted at the Lansing Correctional Facility ("LCF") in 2015.[1] (Doc. 1, at 2.) Despite his assurance of anonymity, his identity was disclosed as part of an LCF employee's civil service appeal in 2016. *Id*. Plaintiff alleges that the employee, Andrew Lucht, then released Plaintiff's name to other

---

[1] "Information provided by Inmate Collins and others resulted in administrative action against several staff and inmates involved with Security Threat Groups at Lansing Correctional Facility . . . the identity of Collins and other sources of information was provided to members of these Security Threat Groups and staff by an unidentified staff member." (Doc. 1–1, at 1, KDOC Administrative Segregation Report dated August 23, 2017). "Inmate Collins has 'green light' on him from the Gangster Disciples, A.B's, Bloods, Crips, and the AUSATRU." *Id*.

implicated staff involved with the corruption and to Security Threat Group leaders. *Id*. at 6. Plaintiff alleges that he was targeted after his name was divulged to Security Threat Groups.

In 2017, Plaintiff filed an action in this Court seeking a transfer out of state for his protection. *See Collins v. Norwood*, Case No. 17-3189-SAC (D. Kan.).[2] Plaintiff alleges that he was released from custody in 2020, but is now back in KDOC custody. Plaintiff alleges that he was already receiving threats while housed in the county jail, and Corporal Dyson from Crawford County emailed "the Topeka EAI gang guys" prior to him returning to KDOC custody and informed them that gangs were still actively trying to attack Plaintiff. (Doc. 1, at 6.) Plaintiff alleges that Plaintiff also informed KDOC staff of the threats upon his arrival at the El Dorado Correctional Facility. *Id*. Plaintiff alleges that despite these warnings, he was housed with the same inmate that Deputy Dyson emailed KDOC about prior to Plaintiff's return. *Id*.

Plaintiff alleges that he was given the option to go to Ellsworth or Larned, and he arrived at Larned on December 13, 2022.[3] *Id*. Plaintiff alleges that by December 17, 2022, he was already targeted for attack by gangs. *Id*. Plaintiff alleges that he was then placed in restrictive housing. *Id*. at 7. Plaintiff alleges he has been told that "Topeka is supposedly working on it, supposedly Hrabe" in regard to his placement, but he has not received anything in writing. *Id*. at 5. Plaintiff alleges that Hrabe and Waldock are retaliating against Plaintiff because he is pushing for adherence to IMPP 11-104 (Decision Making: Interstate Corrections Compact – Facility Transfer) and due to his previous action in Case No. 17-3189-SAC. *Id*. Plaintiff alleges that after his March 6, 2023 segregation review meeting, Lt. Lines screamed down the hallway around other inmates that

---

[2] This action was dismissed as moot after Plaintiff was transferred to a detention facility in Missouri on November 15, 2017. *Id*. at Doc. 29.
[3] Plaintiff attaches a grievance that suggests that the plan was for him to go to Larned for four months until his points dropped off, making him eligible to transfer to the low-medium facility at Oswego. (Doc. 1–1, at 5.)

Plaintiff "was a CI/snitch, telling on inmates and that's why [he] had to be sent out in 2017." *Id*. at 5, 8.

Plaintiff alleges that he is being held in segregation and is being forced to accept cell mates from general population. If he refuses to accept them, he received a disciplinary report for disobeying orders. *Id*. at 7. Plaintiff alleges that keeping him in long term segregation prevents him from earning program credits, and from buying food and electronics. *Id*. at 4.

Plaintiff alleges violations of the Eighth and Fourteenth Amendments. He names as defendants: Melissa Waldock, KDOC Classifications Administrator; Joel Hrabe, KDOC Deputy Secretary; Jeff Zmuda, KDOC Secretary of Corrections; and Andrew Lucht, Former EA1/Major at LCF. Plaintiff seeks an injunction ordering his transfer out of state or to Oswego; punitive damages; and declaratory relief. *Id*. at 9.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the

complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

"Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted). To prevail on a failure to protect claim, a plaintiff must show:  "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court

orders the appropriate KDOC officials to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

(1) The Court will enter a separate e-service order directing the Clerk of Court to serve Defendants.

(2) The KDOC shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen Plaintiff's Complaint. If the Complaint survives screening, the Court will enter a separate order setting an answer deadline. Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3) The KDOC officials are directed to undertake a review of the subject matter of the Complaint:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(6) Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(7) No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(8) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

**Dated April 3, 2023, in Kansas City, Kansas.**

>   s/ John W. Lungstrum
>   JOHN W. LUNGSTRUM
>   UNITED STATES DISTRICT JUDGE